IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

DONTE STEWART,                    *
                                  *
     Plaintiff,                   *
                                  *
v.                                *
                                  *     CV 116-021
WILLIAM MCBRIDE and WESLEY        *
MARTIN,                           *
                                  *
     Defendants.                  *
                                  *
                                  *

### O R D E R

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. This protection prohibits a police officer from using deadly force to stop a fleeing non-violent suspect unless the suspect is a serious threat to the officer or the public. See Vaughan v. Cox, 343 F.3d 1323, 1333 (11th Cir. 2003). According to the facts alleged in Plaintiff's complaint, Plaintiff attempted to flee his apartment after someone complained about a party he was throwing. Defendant Wesley Martin saw him leaving and opened fire on his car. Plaintiff has now sued Officer Martin for using excessive force. He has also sued Chief William McBride for failing to adequately supervise Officer Martin. Chief McBride moves to dismiss the claim against him, arguing that he

is entitled to qualified immunity. Because Plaintiff has alleged facts that, when taken as true, show that Chief McBride violated clearly established law, the Court **DENIES** Chief McBride's motion (doc. 9).

I. <u>**Background**</u>

Accepting the facts alleged in Plaintiff's complaint as true and viewing the allegations in the light most favorable to Plaintiff, as the Court must, <u>see</u> <u>Am. United Life Ins. Co. v. Martinez</u>, 480 F.3d 1043, 1057 (11th Cir. 2007), the facts of this case are as follows. On the night of February 20, 2014, Plaintiff, a student at Augusta University,[1] hosted a party at his on-campus apartment. (<u>See</u> Doc. 1, Compl. ¶¶ 14, 17.) Someone — presumably a neighbor — called in a noise complaint to the complex's Resident Advisor. (<u>Id.</u> ¶ 17.) Under university policy, Resident Advisors were required to seek police assistance when they investigated noise complaints. (<u>Id.</u> ¶ 16.) Thus, after receiving the call about Plaintiff's apartment, the Resident Advisor contacted campus police, and several officers, including Officer Martin, responded to the call. (<u>Id.</u> ¶¶ 17-18.)

During the inquiry, Plaintiff left the apartment, got in his car, and attempted to leave the complex. (<u>Id.</u> ¶ 19.) Officer Martin, who had remained in the parking lot, overheard

---

[1] At the time, Augusta University was known as Georgia Regents University.

2

on a radio that someone was attempting to leave the complex and parked his car near the parking lot's exit. (Id. ¶¶ 113-14.) As he tried to leave the parking lot, Plaintiff saw Officer Martin and stopped his car. (Id. ¶ 115.) When Officer Martin saw Plaintiff, he drew his weapon and, without provocation, "shot [Plaintiff] in the face." (Id. ¶ 19.) Plaintiff then attempted to drive away from Officer Martin, and as he did, Officer Martin continued to fire his gun, striking Plaintiff's car ten times. (Id. ¶ 121.)

Officer Martin has a history of using disproportionate force. In 2010, Officer Martin stopped Frederick Gibbons for driving with a paper tag on his car. (Id. ¶ 49.) When Mr. Gibbons attempted to explain that his tag was valid, Officer Martin "became outraged" and arrested Mr. Gibbons, handcuffing him so tightly that his wrists bled. (Id.) In 2012, Officer Martin stopped Mr. Gibbons a second time for not having a valid tag. (Id. ¶ 65.) Officer Martin once again "became outraged," and this time he tased Mr. Gibbons five times, without justification, while Mr. Gibbons was in his car. (Id. 66-67.) In fact, Officer Martin later admitted that he tased Mr. Gibbons because Mr. Gibbons did not roll his window down far enough.[2] (Id. ¶ 69.) Then, in 2013, Officer Martin stopped Keith James

---

[2] Mr. Gibbons sued Officer Martin and Chief McBride in this Court over this incident. See Gibbons v. McBride, 124 F. Supp. 3d 1342 (S.D. Ga. 2015).

3

for speeding. (Id. ¶ 77.) As he approached Mr. James's car, without reason, Officer Martin drew his gun and threatened to shoot Mr. James. (Id. ¶¶ 77-78.) Fearing for his life, Mr. James attempted to drive away, and as he did, Officer Martin began shooting at his car.[3] (Id. ¶¶ 78-81.)

Defendant William McBride, Chief of Police and Director of Public Safety at Augusta University, knew about each of these events. He appointed an investigator to look into both incidents involving Mr. Gibbons, and he received a use-of-force report about Officer Martin's shooting at Mr. James. (Id. ¶¶ 51, 71, 86.) The investigator both times determined that Officer Martin was justified in his use of force on Mr. Gibbons, and the report concerning Mr. James concluded that Officer Martin acted appropriately. (Id. ¶¶ 53, 72, 86.) Chief McBride adopted each of these findings, and Plaintiff alleges that he did so to avoid punishing Officer Martin. (See id. ¶¶ 91-93.)

Plaintiff filed this lawsuit in February 2014 asserting various claims under 42 U.S.C. § 1983 against Officer Martin and Chief McBride in their individual and official capacities. Since then, Plaintiff has stipulated that his official-capacity claims fail and has dismissed all but two counts: (1) an excessive-force claim against Officer Martin; and (2) a

---

[3] Plaintiff also alleges that Officer Martin used excessive force on at least two other individuals and that Chief McBride knew about these events. (See Compl. ¶¶ 54-64.)

4

supervisory-liability claim against Chief McBride. Chief McBride now moves to dismiss the claim against him.[4]

## II. **Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The Court, however, need not accept legal conclusions as true, only well-pleaded facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

---

[4] Plaintiff voluntarily dismissed counts three through six under Federal Rule of Civil Procedure 41(a)(1)(A)(i). For the sake of completeness, the Court **DISMISSES** these claims without prejudice.

5

### III. Discussion

Under 42 U.S.C. § 1983, a plaintiff may hold a government official liable for causing the deprivation of a constitutional right. Plaintiff seeks to hold Chief McBride liable for Officer Martin's actions under a supervisory-liability theory. Chief McBride moves to dismiss that claim, asserting qualified immunity.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). For qualified immunity to be available, a government official must show that he was acting within his discretionary authority at the time of the allegedly wrongful act. Id. Once he has done that, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. (citation omitted) (internal quotation marks omitted).

Courts use a two-part analysis to decide whether a government official is entitled to qualified immunity. First, a court must decide whether the plaintiff has alleged a violation of a constitutional right. Saucier v. Katz, 533 U.S. 194, 201

(2001). If he has, then the court must decide whether that constitutional right was "clearly established." Id.

Here, it is undisputed that Chief McBride was acting within his discretionary authority at the time of the alleged events. The Court is therefore concerned only with whether Chief McBride violated a clearly established constitutional right.

## A. Whether Chief McBride Violated a Constitutional Right

Plaintiff contends that Chief McBride is liable under § 1983 based on a supervisory-liability theory. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted) (internal quotation marks omitted). Rather, supervisors may face liability for their subordinates' acts "when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Id. A plaintiff can establish the necessary causal connection by, among other things, showing that a supervisor's custom or policy results in deliberate indifference to constitutional rights. Id. A plaintiff will prevail on a supervisory-liability claim when he shows that a supervisor was aware of a subordinate's past constitutional

7

deprivations and thus of the need for more supervision. Cf. id. at 1361-62 (holding that supervisory defendants did not commit constitutional violations but noting that the plaintiffs did not allege that the defendants "had any knowledge of [the subordinates'] failure to monitor inmates or that [the subordinates] had any past history, or even a prior incident, of failing to monitor inmates"); Murdock v. Cobb Cty., No. 1:12-CV-01743-RWS, 2013 WL 2155465, at *6-7 (N.D. Ga. May 17, 2013) (denying motion to dismiss where a supervisor was aware of a subordinate's "problematic history and yet failed to take steps to protect the public against him"); Wilson ex rel. Estate of Wilson v. Miami-Dade Cty., No. 04-23250-CIV, 2005 WL 3597737, at *4 (S.D. Fla. Sept. 19, 2005) (denying motion to dismiss where the county was aware of "other incidents of similar conduct," which supported "a theory that there was a failure to supervise or train").

Here, Plaintiff has sufficiently alleged that Chief McBride committed a constitutional violation. He has alleged that although Chief McBride was aware of Officer Martin's record of using excessive force, Chief McBride took no corrective action. Indeed, according to Plaintiff, Chief McBride ratified Officer Martin's prior conduct. Thus, at this stage of the litigation, the Court is satisfied that Plaintiff has established that Chief McBride failed to adequately supervise Officer Martin and thus

8

"failed to take steps to protect the public against him." Murdock, 2013 WL 2155465, at *7.

**B. Whether the Law was Clearly Established**

The inquiry into whether a constitutional right was clearly established typically "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. A plaintiff must often point to case law involving similar facts. See Oliver v. Fiorino, 586 F.3d 898, 907 (11th Cir. 2009). But factual similarity with a prior case is not necessary as long as the unlawfulness of the act is "apparent from pre-existing law." Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011). Indeed, a plaintiff may rely on a general rule if it is "obvious that the general rule applies to the specific situation in question." Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010).

The law concerning supervisory liability was undeniably clear at the time of the shooting. See Cottone, 326 F.3d at 1360. And as Chief McBride concedes, clearly established law prohibited Officer Martin from shooting Plaintiff as he tried to flee an investigation into a noise complaint. See Tennessee v.

9

Garner, 471 U.S. 1, 11-12 (1985); Morton v. Kirkwood, 707 F.3d 1276, 1281-82 (11th Cir. 2013) (concluding that an officer violated a plaintiff's Fourth Amendment right to be free from excessive force when he shot the plaintiff without probable cause that the plaintiff committed a crime involving serious physical harm or that the shooting was necessary to prevent escape); Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003) ("Under Garner, a police officer can use deadly force to prevent the escape of a fleeing non-violent felony suspect only when the suspect poses an immediate threat of serious harm to police officers or others.").

The only remaining question therefore is whether clearly established law required Chief McBride to supervise Officer Martin in a way that would prevent further harm to the public. The Court is satisfied that it did because "the need for more or different [supervision was] obvious." Belcher v. City of Foley, 30 F.3d 1390, 1397-98 (11th Cir. 1994). Considering the severity of and Chief McBride's knowledge of Officer Martin's alleged prior misconduct, it was obvious that corrective action was necessary to protect the public. And although this is a somewhat general legal rule, it clearly applies to the facts alleged in the complaint. See Gibbons v. McBride, 124 F. Supp. 3d 1342, 1372 (S.D. Ga. 2015).

Because Plaintiff has alleged facts showing that Chief McBride violated clearly established law, Chief McBride is not entitled to qualified immunity at this stage of the litigation. The Court thus **DENIES** Chief McBride's motion to dismiss.

### IV. Conclusion

In sum, the Court **DENIES** Chief McBride's motion to dismiss (doc. 9) and **DISMISSES WITHOUT PREJUDICE** counts three through six. The Court also **LIFTS** the stay on discovery (doc. 15).

**ORDER ENTERED** at Augusta, Georgia this 27TH day of June, 2017.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA